IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DOMINO'S FARMS CORPORATION; and THOMAS MONAGHAN, Owner of Domino's Farms Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>KATHLEEN SEBELIUS, *et al.*,<br><br>Defendants. | Case No. 2:12-cv-15488<br><br>Judge Lawrence P. Zatkoff<br><br>Magistrate Judge Michael Hluchaniuk |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# INTRODUCTION

As ordered by the Court, Defendants submit this supplemental memorandum in order to address the arguments raised by the Attorney General for the State of Michigan, Bill Schuette. Attorney General's arguments largely track those asserted by plaintiffs. But the Attorney General, like plaintiffs, ignores that only *religious* institutions exercise religion for the purposes of RFRA; that whether a burden on the exercise of religion qualifies as *substantial* for the purposes of RFRA is a legal question for the Court; and that, even if there were a substantial burden on the exercise of religion, the regulations satisfy strict scrutiny.[1] Notably, although the Attorney General relies heavily on the Seventh Circuit motions panel decision in *Korte v. Sebelius*, No. 12-3841, 2012 WL 6757353 (7th Cir. Dec. 28, 2012), the Attorney General all but ignores the most relevant authority from this circuit, *Autocam v. Sebelius*, No. 12-2673 (6th Cir. Dec. 28, 2012), in which the motions panel determined in a nearly identical case that the plaintiffs had "not demonstrated more than a possibility of relief" or that the other preliminary injunction factors weighed in their favor. *Id.* at 2-3. For the reasons explained below, as well as those stated in defendants' opposition to plaintiffs' motion for a temporary restraining order and defendants' opposition to plaintiffs' motion for a preliminary injunction, defendants respectfully ask that the Court deny preliminary injunctive relief.

# ARGUMENT

### A. The Preventive Services Coverage Regulations Do Not Substantially Burden Any "Exercise of Religion" by For-Profit, Secular Companies or Their Owners

The "first question" in addressing plaintiffs' RFRA claim, is whether the preventive services coverage regulations impose a substantial burden on any exercise or religion. *See Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 733 (6th Cir. 2007). Plaintiffs cannot establish any such burden on the exercise of religion because the regulations

---

[1] The Attorney General's arguments with respect to compelling interest and least restrictive means largely parrot those made by plaintiffs in their motion for a temporary restraining order and their motion for a preliminary injunction. Thus, rather than respond to those arguments here, defendants incorporate by reference the arguments made in their previous opposition memoranda. *See* Defs.' Opp'n to Pls.' Mot. for a Temporary Restraining Order ("Defs.' TRO Opp'n") at 16-21; Defs.' Opp'n to Pls.' Mot. for a Prelim. Inj. ("Defs.' PI Opp'n") at 6-8.

apply only to the group health plan offered by Domino's Farms, a for-profit, secular corporation that cannot exercise religion within the meaning of RFRA or the Free Exercise Clause. As defendants explained in their opposition to plaintiffs' motion for a temporary restraining order, although the First Amendment freedoms of speech and association are "enjoyed by religious and secular groups alike," the Free Exercise Clause "gives special solicitude to the rights of *religious* organizations." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 706 (2012) (emphasis added); *see also, e.g.*, *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952) (the Supreme Court's precedent "radiates . . . a spirit of freedom for *religious* organizations, an independence from secular control or manipulation") (emphasis added); *Werft v. Desert Sw. Annual Conference*, 377 F.3d 1099, 1102 (9th Cir. 2004) ("The Free Exercise Clause protects . . . *religious* organizations . . . .") (emphasis added); *Anselmo v. Cnty. of Shasta*, No. CIV. 2:12-361 WBS EFB, 2012 WL 2090437, at *13 (E.D. Cal. 2012) ("Although corporations and limited partnerships have broad rights, the court has been unable to find a single [Religious Land Use and Institutionalized Persons Act ("RLUIPA")] case protecting the religious exercise rights of a non-religious organization such as Seven Hills."). Thus, because Domino's Farms is plainly secular, *see* Defs.' TRO Opp'n at 9, rather than religious, it is not entitled to the protections of the Free Exercise Clause or RFRA. *See Hobby Lobby v. Sebelius*, 870 F. Supp. 2d 1278, 1291 (W.D. Okla. 2012) (denying the plaintiffs' motion for a preliminary injunction because, among other reasons, "for-profit corporations do not have First Amendment rights under the Free Exercise Clause"); *Conestoga Wood Specialities Corp. v. Sebelius*, Civil Action No. 12-6744, 2013 WL 150110 (E.D. Pa. Jan. 11, 2013) ("While religious organizations, as a means by which individuals practice religion, have been afforded free exercise rights, courts have consistently limited such holdings to religious organizations.").

Indeed, since oral argument on plaintiffs' motion for a preliminary injunction, a motions panel of the Third Circuit, in *Conestoga Woods Specialities v. Sebelius*, No. 13-1144, Opinon/Order (3d Cir. Feb. 7, 2013), denied an analogous motion for preliminary injunctive

2

relief pending appeal for this reason, among others. The motions panel explained that the plaintiff, "as a secular, for-profit corporation," "has no free exercise rights under the First Amendment" or RFRA. *Id.* at 3 (citations omitted); *see also Conestoga Wood Specialties Corporation v. Sebelius*, No. 13-1144, Concurrence at 2 (3d Cir. Feb. 2013) (Garth, J., concurring) *("[F]or-profit corporate entities*, unlike religious *non-profit organizations*, do not— and cannot—legally claim a right to exercise or establish a 'corporate' religion under the First Amendment or the RFRA. . . . [G]eneral business corporations do not pray, worship, observe sacraments or take other religiously-motivated actions separate and apart from the intention and direction of their individual actors. Unlike religious *non-profit corporations or organizations*, the religious liberty relevant in the context of for-profit corporations is the liberty of its individuals, not of a *profit-seeking* corporate entity." *Id.* (internal citations and quotations omitted)).

      The Attorney General arguments to the contrary are unconvincing. The Attorney General relies on *United States v. Lee*, 455 U.S. 252 (1982), and *Sherbert v. Verner*, 374 U.S. 398 (1963), to suggest that a for-profit, secular employer may exercise religion. *See* Attorney General Bill Schuette's Amicus Brief in Supp. of Pls.' Mot. for Prelim. Inj. ("AG's Br.") at 9-10. He wholly ignores, however, that the plaintiffs in those cases were *individuals* engaged in commercial activity. Those cases, therefore, say nothing on the question of whether a *corporation* may assert a claim under the Free Exercise Clause or RFRA. *See Hobby Lobby*, 870 F. Supp. 2d at 1292 n.13 (similarly rejecting the plaintiffs' reliance on *Lee* because that case did not involve a corporation). Nor does *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), stand for the proposition that corporations enjoy the entire spectrum of First Amendment rights, as the Attorney General suggests. *See* AG's Br. at 17-18. In that case, the Court "focused on the history and purpose of free speech rights, particularly political speech," and "built upon the long-accepted principle that corporations have free speech rights protected by the Constitution." *Conestoga*, 2012 WL 140110, at *6 (discussing *Citizens United*). In contrast, "the nature, history and purpose of the Free Exercise Clause demonstrate that it is one of the 'purely personal' rights

3

referred to in [*First National Bank v.*] *Bellotti*, and as such, is unavailable to a secular, for-profit corporation." *Id.* at *7; *see also Hobby Lobby*, 870 F. Supp. 2d at 1291 (same).[2]

The regulations also do not impose any burden on Mr. Monaghan as an individual, given that the regulations apply to group health plans and health insurance issuers, not the individual owners of the employers who purchase such plans. *See* 42 U.S.C. § 300gg-91(a)(1); 45 C.F.R. § 147.130. To hold otherwise—i.e., that what's done to the corporation is also done to the corporation's owner—would ignore the layers of legal separation between Mr. Monaghan, the individual, and Domino's Farms, "a distinct legal entity, with legal status, obligations, powers, and privileges different" from Mr. Monaghan. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *see also id.* ("The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."). Even though Mr. Monaghan is the sole owner of Domino's Farms, the corporate form shields him from personal liability for Domino's Farm's debts. *See Klager v. Robert Meyer Co.*, 329 N.W.2d 721, 411 (Mich. 1982). Thus, "[i]t would be entirely inconsistent to allow [Mr. Monaghan] to enjoy the benefits of incorporation, while simultaneously piercing the corporate veil for the limited purpose of challenging these regulations." *Conestoga*, 2013 WL 140110, at *8; *see also Autocam*, 2012 WL 6845677, at *7 (finding no substantial burden on corporation's owners' religious exercise and remarking that "the corporation is not the *alter ego* of its owners for the purposes of religious belief and exercise"); *Hobby Lobby*, 870 F. Supp. 2d at 1294 (considering the layers of legal separation between the corporation, to which the regulations apply, and the owners in determining that the owners' religious exercise was not substantially burdened).

---

[2] The Attorney General incorrectly accuses defendants of attempting to "push religious beliefs . . . out of the public square." AG's Br. at 3; *see also id.* at 10. Mr. Monaghan may—and indeed does—manifest his religious beliefs in many ways in running his business, for instance, by offering an on-site Catholic chapel to Domino's Farms's tenants. *See* Compl. ¶ 27, ECF No. 1. But RFRA and the First Amendment do not permit Mr. Monaghan to deprive the employees of Domino's Farms, who, consistent with federal law, were hired without regard to their religious beliefs, ghe protections of federal laws designed to safeguard their health and well-being.

4

### B. The Burden—If Any—On Either Domino's Farms or Mr. Monaghan, Is Too Attenuated to Be "Substantial"

Alternatively, even if the Court declines to address whether a for-profit, secular corporation like Domino's Farms may exercise religion, plaintiffs' claims must fail for another reason: any burden on either Domino's Farms or Mr. Monaghan is too attenuated to qualify as "substantial" as required under RFRA, as recognized by the Sixth, Tenth, and now the Third Circuits, as well as various district courts. *See, e.g.*, *Autocam*, Order at 2-3 (relying on the district court's reasoned opinion in determining that the plaintiffs had not established more than a mere possibility of relief); *Hobby Lobby Stores, Inc. v. Sebelius*, No. 12-6294, Order at 6-7 (10th Cir. Dec. 20, 2012) ("We do not think there is a substantial likelihood that this court will extend the reach of RFRA to encompass the independent conduct of third parties with whom the plaintiffs have only a commercial relationship."); *Conestoga*, Order at 3 ("[A]ny burden imposed by the regulations [is] too attenuated to be considered substantial and [] any burden on the [owners'] ability to exercise their religion [is] indirect."); *Conestoga*, Concurrence at 3 ("The [owners] are, in both law and fact, separated by multiple steps from both the coverage that the company health plan provides and from the decisions that individual employees make in consultation with the physicians as to what covered services they will use.").

The Attorney General's suggestion that the Court may not independently determine whether a burden satisfies the legal requirement of substantiality, AG's Br. at 12-13, is completely at odds with the Sixth Circuit's observation that establishing a "'substantial burden' is a difficult threshold to cross." *Living Water Church of God*, 258 F. App'x at 73. As defendants explained in their opposition to plaintiffs' motion for a preliminary injunction, assuming a substantial burden merely because plaintiffs unilaterally assert one reads RFRA's legal requirement of substantiality completely out of the statute. *See* Defs.' PI Opp'n at 3-5; *see also Autocam*, 2012 WL 6855677, at *7 ("This would subject virtually all government action to a potential private veto based on a person's ability to articulate a sincerely held objection tied in some rational way to a particular religious belief."); *Conestoga*, 2013 WL 140110, at *13 ("If every plaintiff were permitted to unilaterally determine that a law burdened their religious

beliefs, and courts were required to assume that such burden was substantial, simply because the plaintiff claimed that it was the case, then the standard expressed by Congress under RFRA would convert to an 'any burden' standard.").

Moreover, plaintiffs' theory that facilitating the use of contraceptive services by offering a health plan that includes coverage for the services to which Mr. Monaghan objects is a "substantial burden" is limitless, and would permit plaintiffs to attack a whole host of general commercial laws. Indeed, as defendants have explained, under the same logic, plaintiffs could claim a substantial burden because, under minimum wage laws, Domino's Farms must pay its employees a wage, and that wage can—after an independent decision by an employee and her health care provider—be used to purchase contraception, or other goods and services to which Mr. Monaghan may object on religious grounds. *See* Defs.' TRO Opp'n at 14-15; Defs.' PI Opp'n at 5-6; *see also Autocam*, 2012 WL 6855677, at *6 (reasoning that plaintiffs will be "paying indirectly for the same services through wages" that their employees may choose to use "for contraception products and services"); *Conestoga*, 2013 WL 140110, at *13 (remarking that "Conestoga's employees are free to look outside of their insurance coverage and pay for and use any contraception . . . through the salary they receive from Conestoga").

Perhaps recognizing the practical consequences of plaintiffs' theory, the Attorney General attempts to draw a distinction between paying a wage, which can be used to purchase contraceptive services, and providing a health plan through a private insurance company that may be used to pay for such services, arguing that, in the case of providing a health plan, the employer is "closer" to the direct provision of contraceptives and therefore more morally culpable. *See* AG's Br. at 12-13. But contrary to the Attorney General's suggestion, the regulations do not require Domino's Farms, much less Mr. Monaghan himself, to provide contraceptive services directly. Rather, the regulations require only that the health insurance plan Domino's Farms provides to its employees *cover* the full-range of FDA-approved contraceptive services. With respect to both a wage and coverage under Domino's Farms's health plan, it is only after an independent decision by the employee, in consultation with her

6

health care provider, that the benefit provided by Domino's Farms, through an insurance issuer, can be used to obtain services to which Mr. Monaghan objects. And, even then, they are provided by a third party—a private insurance company—not Domino's Farms or Mr. Monaghan. Although defendants do not doubt the sincerity of Mr. Monaghan's personal religious beliefs, such an attenuated burden—if any—does not meet the "substantiality" threshold under RFRA and, accordingly, as recognized by the Sixth Circuit in *Autocam*,[3] plaintiffs have not established "more than a mere possibility of relief," Order at 2, which is insufficient to warrant a preliminary injunction.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in defendants' opposition to plaintiffs' motion for a TRO and opposition to plaintiffs' motion for a preliminary injunction, plaintiffs' motion for a preliminary injunction should be denied.

Respectfully submitted this 14th day of February, 2013,

STUART F. DELERY
Principal Deputy Assistant Attorney General

IAN HEATH GERSHENGORN
Deputy Assistant Attorney General

BARBARA L. MCQUADE
United States Attorney

JENNIFER RICKETTS
Director, Federal Programs Branch

SHEILA M. LIEBER
Deputy Director

*/s/ Bradley P. Humphreys*
BRADLEY P. HUMPHREYS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W.

---

[3] Indeed, as compared to *Autocam*, the burden here—if any—is even more attenuated. In that case, the plaintiffs provided a self-insured insurance plan to their employees instead of using a third-party insurer. In denying the plaintiffs' motion for a preliminary injunction, the district court noted that using a third-party insurer—as Domino's Farms does—would "further attenuate the claimed burden." *Autocam*, 2012 WL 6845677, at *6 n.1.

>Washington, D.C. 20001
>Tel: (202) 514-3367; Fax: (202) 616-8470
>Email: bradley.p.humphreys@usdoj.gov
>VA Bar. No. 83212

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

      I certify that, on February 14, 2013, I electronically filed the foregoing paper with the Clerk of Court using the ECF system, which will send notification of such filing to the following:

Erin Mersino, Esq. (P21410)
Thomas More Law Center
24 Frank Lloyd Wright Drive
P.O. Box 393
Ann Arbor, MI 48106
emersion@thomasmore.org
(734) 827-2001

                                              */s/ Bradley P. Humphreys*
                                              BRADLEY P. HUMPHREYS